IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MORRIS RODGERS,   )   No. C 05-2121 MMC (PR)
            Plaintiff,   )   **ORDER GRANTING MOTION TO DISMISS**
  v.   )
                    )   **(Docket No. 26)**
A. TUCKER, et al.,   )
            Defendants.   )
_____ )

      On May 24, 2005, plaintiff, a California prisoner then incarcerated at Salinas Valley State Prison ("SVSP"),[1] and proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983. On October 19, 2005, the Court ordered plaintiff's amended complaint ("AC") served on eleven SVSP prison officials alleged to be responsible for violating plaintiff's constitutional rights by retaliating against him for complaining about SVSP prison officials and procedures.

      On January 31, 2006, defendants filed a motion to dismiss the AC pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, on the ground plaintiff had failed to exhaust his administrative remedies.[2] Plaintiff thereafter filed opposition, defendants filed a reply,

---

    [1]Plaintiff currently is incarcerated at North Kern State Prison.

    [2]The motion to dismiss was filed on behalf of ten of the eleven defendants ordered served. Subsequently, on April 19, 2006, defendant Carrasco, the last defendant to be served, joined in the motion to dismiss. Consequently, the motion is proceeding with respect to all defendants against whom the Court found plaintiff has stated cognizable claims for relief.

1  plaintiff filed a supplemental opposition, and defendants filed a supplemental reply.  For the
2  reasons stated below, the Court will grant the motion to dismiss.

## FACTUAL BACKGROUND

The AC concerns events that occurred in 2004 and 2005 at SVSP.

In January 2004, plaintiff was elected Chairman of the Men's Advisory Counsel ("MAC"), a prison-authorized and prison-sponsored inmate activity group.  The Chairman is the highest elected position in the MAC.  Plaintiff was paid $48.00 per month for his duties as Chairman.  (AC at 6-10.)

In April 2004, plaintiff filed a grievance with defendant SVSP Warden Evans ("Evans"), against defendant Facility Captain Zavala ("Zavala"), alleging Zavala was unfairly putting black inmates on lockdown and refusing to release them.  In response, Zavala took various retaliatory actions against plaintiff, including conspiring with defendants Evans, Chief Deputy Warden Scribner ("Scribner"), Facility Captain Moore ("Moore"), Facility Captain Wilson ("Wilson"), Facility Captain Tucker ("Tucker"), Correctional Lieutenant Dubsky ("Dubsky"), Correctional Counselor II Winn ("Winn") and Office Technician Carrasco ("Carrasco") to have plaintiff removed from his position as MAC Chairman, and instructing that plaintiff not receive his monthly pay.  Further, when plaintiff complained about not receiving his correct pay, Carrasco retaliated by recommending that plaintiff be reassigned to another job.  (AC at 11-14.)

In November 2004, defendant Correctional Sergeant Traynham ("Traynham"), in retaliation for plaintiff's complaints to Traynham's supervisors that Traynham was not effectively communicating with the MAC members about program issues, charged plaintiff with a false rules violation report ("RVR").  In December 2004, Dubsky, also in retaliation, changed the RVR charge, found plaintiff guilty of the new charge, and assessed plaintiff a thirty-day loss of time credits and privileges.  Thereafter, Wilson and Tucker destroyed the changed RVR because it was unsubstantiated and had not been properly resolved.  (AC at 14-15.)

In January 2005, plaintiff approached Tucker about the continued lockdown of black

1  inmates. When plaintiff told Tucker that plaintiff was the MAC chairman, and reminded
2  Tucker that plaintiff, in 2001, had filed against Tucker a prison grievance complaining about
3  Tucker's administration of various prison programs, Tucker, in retaliation, threatened to
4  write an RVR charging plaintiff for failing, as MAC Chairman, to properly communicate
5  with Tucker. (AC at 15-16.)
6        Also in January 2005, Wilson, Winn, Tucker and Dubsky conspired to change the
7  disposition of plaintiff's December 2004 RVR hearing to "disobeying a direct order," which
8  new disposition resulted in Wilson and Tucker, in conspiracy with Evans, initiating a special
9  classification hearing to remove plaintiff from his position as MAC Chairman. (AC at 17.)
10       Plaintiff filed administrative appeals about the above retaliatory acts. Thereafter,
11 SVSP's two Inmate Appeals Coordinators, defendants T. Variz ("Variz") and S. Gomez
12 ("Gomez"), conspired with Zavala, Wilson, Tucker, Scribner and Evans to obstruct
13 plaintiff's ability to exhaust his appeals, by holding each appeal for several months before
14 improperly screening it out of the appeals process altogether. (AC at 18-20.)
15       In September 2005, Variz, in retaliation for plaintiff's having informed Variz that
16 plaintiff had filed the instant action based, in part, on Variz's failure to properly consider
17 plaintiff's administrative appeals, wrote a false "informational chrono" claiming plaintiff had
18 engaged in "disrespectful correspondence." Subsequently, the chrono was used to deny
19 plaintiff parole. Plaintiff wrote a letter to Evans, the SVSP warden, explaining defendants'
20 retaliatory actions and asking Evans to intervene; Evans instead passed the letter on to
21 Tucker. (AC at 21-22.)
22       Plaintiff claims defendants' actions, as set forth above, were in retaliation for
23 plaintiff's complaints about defendants and their procedures, and violated plaintiff's rights
24 under the First and Fourteenth Amendments. He seeks monetary damages.
25 //
26 //
27 //
28

**DISCUSSION**

A.   Standard of Review

Nonexhaustion under § 1997e(a) is an affirmative defense; defendants have the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). A nonexhaustion defense should be raised in an unenumerated Rule 12(b) motion. Id. In deciding such a motion, the district court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20.[3] If the court concludes the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the complaint without prejudice. Id. at 1120.

B.   The Exhaustion Requirement

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA") provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and not left to the discretion of the district court. Woodford v. Ngo, 548 U.S. 81, 84 (2006). Exhaustion is a prerequisite to all prisoner lawsuits concerning prison life, whether such actions involve general conditions or particular episodes, whether they allege excessive force or some other wrong, and even if they seek relief not available in grievance proceedings, such as money damages. Porter v. Nussle, 534 U.S. 516, 524 (2002).

The State of California provides its prisoners and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15 ("CCR"),

---

[3]If the court looks beyond the pleadings in deciding an unenumerated motion to dismiss for failure to exhaust, the court must give the prisoner fair notice of his opportunity to develop the record. Id. at 1120 n.14. In the instant matter, the Court provided plaintiff with notice pursuant to Wyatt after plaintiff had filed his opposition to defendants' motion to dismiss. In so doing, the Court granted plaintiff the opportunity to file a supplemental opposition, along with any additional evidence in support of the original opposition and the supplemental opposition. (Order, filed Aug. 23, 2006, at 2.) Plaintiff filed a supplemental opposition on November 30, 2006.

4

§ 3084.1(a).[4]  In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal review, (2) first formal level appeal on a CDC 602 inmate appeal form, (3) second formal level appeal to the institution head or designee, and (4) third formal level appeal to the Director of the California Department of Corrections and Rehabilitation ("Director").  See CCR § 3084.5; Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).  A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a).  Id. at 1237-38.

The exhaustion requirement cannot be satisfied by the filing of an untimely or otherwise procedurally defective administrative grievance or appeal.  See Woodford, 548 U.S. at 84.  Rather, "proper exhaustion" of available administrative remedies is required.  Id. at 92.  If the prisoner did not exhaust his available administrative remedies before he filed suit, the action must be dismissed.  McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).

C.   Analysis

Defendants argue plaintiff did not exhaust his administrative remedies because he did not receive, before filing the instant action, a decision on the merits from the Director's level of review with respect to any of the claims plaintiff raises in the AC.

In support of their argument, defendants submit a declaration by N. Grannis ("Grannis"), Chief of the Inmate Appeals Branch ("IAB") at the California Department of Corrections and Rehabilitation.  According to Grannis, the IAB keeps an electronic record of each inmate administrative appeal that has proceeded through the final level of review, the Director's level.  (Decl. N. Grannis Supp. Mot. Dismiss ("Grannis Decl.") ¶ 2.)  Grannis has attached to his declaration the IAB computer printout of a report showing each inmate appeal filed by plaintiff at the Director's level of review since 1997.  (Id. ¶ 3 & Ex. A.)  The report lists which of plaintiff's appeals were addressed at the Director's level of review and which appeals were "screened out," i.e., rejected for procedural reasons, at the Director's level of review.  (Id.)  Additionally, defendants submit a computer printout of a report of all appeals

---

[4]Unless otherwise noted, all further references to code sections are to title 15 of the California Code of Regulations.

5

filed by plaintiff when he was incarcerated at SVSP. (Decl. Samantha D. Tama Supp. Mot. Dismiss ("Tama Decl.") Ex. B.) The report lists which of plaintiff's appeals were decided on the merits at either the first or second level of review, and which appeals were screened out. (Id.)

Together, the reports of plaintiff's SVSP and Director's-level appeals show the following: Between April 2004, when the first act of retaliation alleged by plaintiff in the AC occurred, and May 24, 2005, when plaintiff filed the instant action, plaintiff initiated twenty formal-level appeals at SVSP. (Id.) Of those, three were screened out. (Id.) During that same time period, plaintiff submitted eleven appeals to the Director's level of review; three of those appeals were screened out. (Grannis Decl. Ex. A.) Of the eight appeals that were addressed on the merits at the Director's level of review prior to plaintiff's filing the instant action, none involved the claims at issue herein. (Grannis Decl. ¶ 4.) After plaintiff filed the instant action, four appeals submitted by plaintiff to the Director's level of review were addressed on the merits; three of those appeals addressed retaliation claims plaintiff has raised herein.[5] (Grannis Decl. ¶ 4 & Ex. A.)

Based on the above evidence, defendants argue the administrative appeals process was available to plaintiff to exhaust his claims before filing suit, yet plaintiff failed to properly exhaust his administrative appeals. In particular, defendants assert the reports show that plaintiff could have used the appeals process to properly exhaust his claims because: (1) plaintiff succeeded in having the majority of his SVSP appeals proceed past the first level of review; (2) plaintiff succeeded in having the majority of his Director's-level appeals addressed on the merits; (3) plaintiff succeeded in having three Director's-level appeals concerning his retaliation claims addressed on the merits after he filed the instant action; and

---

[5]Specifically: (1) Appeal No. 05-00418, alleging retaliation by Evans, Scribner, Tucker, Moore and Zavala, was received at the Director's level of review on May 12, 2005, and denied on the merits on July 26, 2005; (2) Appeal No. 05-00576, alleging retaliation by Moore, was received at the Director's level of review on June 30, 2005, and granted in part on August 15, 2005; (3) Appeal No. 05-00780, alleging retaliation by Moore and Tucker, was received at the Director's level of review on May 31, 2005, and denied on the merits on August 19, 2005. (See Grannis Decl. Ex. A; Pl.'s Decl. Supp. Opp.)

1  (4) plaintiff failed to appeal his screened-out appeals to the Director's level of review, even
2  though administrative remedies remained available to him to do so.  Specifically, CCR §
3  3084.1(a) provides prisoners the right to appeal administratively "any departmental decision,
4  action, condition or policy perceived by those individuals as adversely affecting their
5  welfare."  Additionally, the form used to screen out inmate appeals states that such decision
6  can be appealed if the prisoner "can support an argument that the [reason for screening out
7  the appeal] is inaccurate."  (Tama Decl. Ex. B.)

8  　　　In his opposition and supplemental opposition to the motion to dismiss, plaintiff does
9  not dispute that none of his appeals about his retaliation claims was addressed on the merits
10 at the Director's level of review before he filed the instant action.  Rather, he argues the
11 Court should allow his claims to proceed because SVSP prison officials intentionally
12 interfered with his ability to exhaust his administrative appeals, as is evidenced by the fact
13 that his appeals were screened out by Inmate Appeals Coordinators Variz and Gomez before
14 the appeals reached the Director's level of review.  As a result, plaintiff asserts, he had no
15 other recourse than to bypass the appeals process and send letters directly to SVSP Warden
16 Evans and N. Grannis at the IAB complaining about Variz and Gomez's actions.

17 　　　In their reply and supplemental reply, defendants contend plaintiff's argument is based
18 on conclusory assertions and plaintiff has produced no evidence showing the appeals he filed
19 with respect to the allegations in the instant matter were screened out for any reason other
20 than his failure to comply with the procedural requirements of the appeals process.

21 　　　As noted above, in Woodford v. Ngo, 548 U.S. at 84, the Supreme Court made clear
22 that the exhaustion requirement cannot be satisfied "by filing an untimely or otherwise
23 procedurally defective administrative grievance or appeal."  Rather, the PLRA exhaustion
24 requirement requires proper exhaustion: "Proper exhaustion demands compliance with an
25 agency's deadlines and other critical procedural rules because no adjudicative system can
26 function effectively without imposing some orderly structure on the course of its
27 proceedings."  Id. at 90-91 (footnote omitted).  The requirements of the prison's grievance
28 process, not the PLRA, define the boundaries of proper exhaustion.  Jones v. Bock, 127 S.

7

Ct. 910, 923 (2007).

Here, the record shows the appeals plaintiff filed at SVSP concerning his retaliation claims were not properly exhausted because the appeals were screened out for procedural reasons. Further, although administrative remedies remained available to him to do so, plaintiff did not use the appeals process to pursue the screened-out appeals to the Director's level of review, and, consequently, he did not receive a decision on the merits of any of those appeals from the Director's level before he filed the instant action. Accordingly, the Court finds, under Woodford, that the screened-out SVSP appeals are unexhausted. While Woodford left open the possibility that proper exhaustion might not be required where prison administrators "devise procedural requirements that are designed to trap unwary prisoners and thus to defeat their claims," id. at 102, plaintiff has presented no evidence that such circumstances occurred here. Rather, contrary to plaintiff's assertion that defendants were screening out his appeals to prevent him from exhausting his administrative remedies, the evidence produced by defendants shows plaintiff filed numerous appeals at SVSP that were not screened out and either were granted or granted in part or proceeded to the Director's level of review. Additionally, defendants' evidence shows that eight of the appeals plaintiff filed at the Director's level of review were addressed on the merits before plaintiff filed suit, and four more have been addressed on the merits since. (Grannis Decl. at 2-3 & Ex. A.)[6]

Based on the foregoing, the Court rejects plaintiff's argument that his failure to exhaust any appeal regarding the claims at issue herein should be excused. Defendants have met their burden of raising and proving the absence of exhaustion by showing plaintiff's appeals were screened out for procedural reasons and administrative remedies remained available to him to attempt to obtain the relief he sought. Plaintiff has not produced evidence

---

[6]As noted above, three of the appeals that were decided at the Director's level of review after plaintiff filed the instant action concern the retaliation claims at issue herein. As those claims were not exhausted before plaintiff filed suit, however, the exhaustion requirement is not satisfied. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (holding action must be dismissed unless prisoner exhausts available administrative remedies before he files suit; holding subsequent exhaustion pendente lite does not suffice under § 1997(e)).

8

1  to the contrary, nor has he shown that his inability to exhaust was the result of procedural
2  requirements designed to "trap" him and make it impossible for him to complete the
3  administrative appeals process.  See Woodford, 548 U.S. at 102.  Accordingly, the Court
4  finds plaintiff did not properly exhaust his administrative remedies, and defendants' motion
5  to dismiss the AC as unexhausted will be granted.

## CONCLUSION

For the foregoing reasons, the motion to dismiss the amended complaint is hereby GRANTED, and the above-titled action is hereby DISMISSED as to all defendants.  The dismissal is without prejudice to plaintiff's refiling his claims after all available administrative remedies have been exhausted.

This order terminates Docket No. 26.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED: September 10, 2008

_____
MAXINE M. CHESNEY
United States District Judge